IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

HANSEN-MUELLER CO.,

                                    Debtor(s).

CASE NO. BK 25-81226-TLS

CHAPTER 11

ORDER

This matter is before the Court on Debtor's Omnibus Objection To Certain Claims Filed Pursuant To 11 U.S.C. § 557 Procedures (Fil. No. 430) and resistances thereto. Hearing was held on April 14, 2026. Brian Koenig appeared for the debtor; Jerry Jensen appeared for the United States Trustee; Elizabeth Lally and Jacob Schwartz appeared for the Official Committee of Unsecured Creditors; David Langston and Ozen Zimmerman appeared for the Texas Producers; James Sullivan appeared for BMO Bank, NA; Shane Mecham appeared for Harco National Insurance Company and International Fidelity Insurance Company; James Niemeier appeared for Farm Credit Services of America, PCA, Farm Credit Services Mid-America, and CoBank, ACB; Michael Gustafson appeared for Bunge USA Grain & Bunge Canada, Inc.; Rob Shortridge appeared for the Mississippi Claimants; and Maurice VerStandig appeared for the North Dakota Producers.

The hearing was held to determine whether and to what extent grain producers or merchants have rights under § 557 to grain or grain proceeds held by the debtor. As part of the hearing, the claims of the North Dakota Producers were represented as settled and a number of other claims were disallowed for procedural reasons. This order addresses those disallowed, settled, and deferred claims along with the remaining claims, which are those of Texas Producers and the Mississippi Claimants.

Section 557 of the Bankruptcy Code is designed to expeditiously determine the rights of various parties in grain and grain proceeds when an owner or operator of a grain storage facility files bankruptcy. In compliance with that section, the Court issued an order establishing procedures for interested parties to file specific claims regarding the debtor's grain and its proceeds. (Fil. No. 262). Those procedures in this case resulted in 89 grain claims, primarily from grain producers in several states who sold and delivered grain to Hansen-Mueller but did not receive payment. At the hearing, 62 of those claims were denied for procedural reasons. The three claims of the North Dakota Producers were settled, with the Court awaiting documentation. Bunge Canada's claim was deferred at the request of the debtor and Bunge. The remaining 23 claims were filed by entities referred to as the Texas Producers and the Mississippi Claimants. The Texas Producers contend they are protected by a state statutory lien intended to shield grain producers in just such a situation. However, as explained below, I find the liens are unperfected and thus do not provide the Texas Producers with the level of priority they believe they are entitled to. The Texas Producers raise other arguments in support of their claims, including alternative perfection under § 546(b), their lenders' priority security interests in the grain proceeds, and reclamation. For the reasons stated

below, the Texas Producers may further develop their reclamation claims. The rest of their arguments do not support the relief they seek. Likewise, the Mississippi Claimants will also be given the opportunity to further develop their reclamation and equitable subordination arguments in support of their claims.

## I.   Duplicate, defaulted, and procedurally defective claims

The debtor identified a number of claims that failed to comply with the order setting out the procedures for determining rights to grain and grain proceeds under 11 U.S.C. § 557 (Fil. No. 262). Those claims were disallowed on the record at the April 14th hearing and are set forth here to complete the record.

   a.   Five claims were submitted after the deadline established in the order, and accordingly are disallowed.[1]

   b.   55 claimants did not respond to the debtor's Omnibus Objection to Grain Claims (Fil. No. 430). Accordingly, those claims are disallowed.[2]

---

[1] Those claims are Drew Parsley (Claim No. 377); Dillon Scott Springer (Claim No. 385); Keith Meyer Farms (Claim No. 386); Kyle Jeffery Sullivan (Claim No. 387); and LeRoy Coop Association, Inc. (Claim No. 389).

[2] Those claims are Danielski Harvesting & Farming (Claim No. 273); Jeffrey Mark Anderson (Claim No. 276); BB Sczepanski LP (Claim No. 281); Ross Townsend (Claim No. 283); Skyler Dowling (Claim No. 289); Kirby Farms, Inc. (Claim No. 290); Jay Frenzel (Claim No. 292); Joey Lee Potucek (Claim No. 295); Collwest Grain Ltd. (Claim No. 296); Cameron Lundeen (Claim No. 297); Brian Lundeen (Claim No. 298); S & B Grain Co. LLC (Claim No. 299); Richardson Farms (Claim No. 300); Mitchell Wavra (Claim No. 301); Mark Wavra (Claim No. 302); Diamond Rice, Inc. (Claim No. 304); River Bottom Farms, LLC (Claim No. 305); Ethan Leichtman (Claim No. 309); Doug Schwartz Trucking, Inc. (Claim No. 310); Quality Transport (Claim No. 312); Oahe Grain Corp. (Claim No. 315); Hasbargen Farms (Claim No. 316); Jason Bonifas (Claim No. 327); Weskan Grain, LLC (Claim No. 328); Darwin Boutain – Boutain Farms (Claim No. 329); Erickson Grain (Claim No. 331); Paoli Farmers Co-operative Elevator Co. (Claim No. 334); HF Bostic Farms, Inc. (Claim No. 335); Ben Looney (Claim No. 336); Dean Hoiland (Claim No. 337); Roger Love (Claim No. 338); Royce Ritter (Claim No. 339); Old Stage Farms (Claim No. 340); EFTA Farms, Inc. (Claim No. 363); McDougal-Sager and Snodgrass Grain, Inc. (Claim No. 364); Louisiana Dept. of Agriculture & Forestry (Claim No. 365); Mylan Gehle (Claim No. 366); Siefker Farms, Inc. (Claim No. 367); Andrew Gettys (Claim No. 368); McIlnay Farms (Claim No. 370); Michael & Amanda Juenemann (Claim No. 372); Alan Bonifas (Claim No. 374); Green Plains Trade Group LLC (Claim No. 375); Keller Grain, Inc. (Claim No. 376); Drew Parsley (Claim No. 377); Magnolia Grain Co. (Claim No. 378); Middleton Planting Co. (Claim No. 379); Dillon Scott Springer (Claim No. 385); Keith Meyer Farms (Claim No. 386); Kyle Jeffery Sullivan (Claim No. 387); Roger Love (Claim No. 388); LeRoy Coop. Association, Inc. (Claim No. 389); Green Plains Trade Group LLC (Claim No. 390); Middleton Planting Co. (Claim No. 392); and Mazour Farms LLC (Claim No. 399).

c. Two claimants filed untimely responses to the Omnibus Objection to Grain Claims (Fil. No. 430). Those claims are disallowed.[3]

d. Four claimants filed duplicate claims. Those duplicate claims are disallowed.[4]

e. Four claimants filed timely responses but they cannot show a right to the grain or its proceeds because they sold their grain to the debtor and have not otherwise shown a retained interest. These claims are disallowed.[5]

That takes care of 62[6] of the 89 total grain claims that were filed under the procedures order. The three North Dakota claims are considered settled.[7] The Bunge claim will be set aside for now. Of the remaining 23 claims, 19 were filed by the Texas Producers and four were filed by the Mississippi Claimants.

## II.   Texas Producers[8]

### a. Statutory liens

The Texas Producers filed their grain claims on the basis of a Texas statute that grants to producers who sell crops to a contract purchaser or warehouse a super-priority lien in that crop or its proceeds. Tex. Prop. Code Ann. § 70.402(a) (West). Such a lien "has priority over a conflicting security interest in or lien on the agricultural crop or the proceeds from the sale of the crop created by the warehouse or the contract purchaser in favor of a third party, regardless of the date the

---

[3] Those are Butch Farms (Claim No. 330) and Justin Gaines (Claim No. 358).

[4] Those claims are USB Joint Venture (Claim No. 352); Roger Love (Claim No. 388); Green Plains Trade Group LLC (Claim No. 390); and Middleton Planting Co. (Claim No. 392).

[5] The claims are Robert McCarley (Claim No. 285); Daniel T. Mashburn & Son Farms (Claim No. 293); Tempel Grain Elevators, LLP (Claim No. 303; and Alan Atkins (Claim No. 393).

[6] Some of the claims are listed in more than one category above.

[7] Those claims are Tyler Narloch (Claim No. 284); Devin Flanders (Claim No. 313); and William Wagner (Claim No. 326).

[8] This group consists of 19 claims: AKA Farms (Claim No. 355); Richard Beyer d/b/a Richard A. Beyer Farms (Claim No. 347); Bures Farms (Claim No. 356); Elliott AGCO (Claim No. 332); Elm Creek Commodities, LLC (Claim No. 353); Fleming Grain & Cattle, LLC (Claim No. 359); Golden Harvest Farms, LLC (Claim No. 344); Justin Hansen d/b/a Hansen Farms (Claim No. 362); Haunted Hill Grain, LLC (Claim No. 349); Hlavinka Cattle Co. JV (Claim No. 357); J & K AG LLC (Claim No. 350); Rodney & Sandra Janczak Farms J.V. (Claim No. 343); Maass Farms General Partnership (Claim No. 351); Mikel Bros. Partnership (Claim No. 333); Dustin Mikel (Claim No. 348); Kyle Miller (Claim No. 342); Howard Pruser (Claim No. 341); USB Jt. Venture (Claim No. 373); and Vykukal Farms, LLC (Claim No. 361).

security interest or lien created by the warehouse or the contract purchaser attached." Tex. Prop. Code Ann. § 70.4045(c) (West).

This lien attaches on delivery (or first date of a series of deliveries), Tex. Prop. Code Ann. § 70.403, and is perfected upon attachment. Tex. Prop. Code Ann. § 70.4045(a).[9] That subsection goes on to say the lien "continues to be perfected if a financing statement covering the

---

[9] § 70.4045. Perfection and Priority of Agricultural Lien on Crops

(a) Notwithstanding Chapter 9, Business & Commerce Code, a lien created under this subchapter is perfected at the time the lien attaches under Section 70.403 and continues to be perfected if a financing statement covering the agricultural crop is filed on or before the 90th day after the date:
    (1) the physical possession of the crop is delivered or transferred by the agricultural producer to the warehouse or the contract purchaser or the purchaser's agent, if there is only one delivery; or
    (2) of the last delivery of the crop to the warehouse or the contract purchaser or the purchaser's agent, if there is a series of deliveries.

(b) If a financing statement covering the agricultural crop is not filed within the time prescribed by Subsection (a)(1) or (2), as applicable, the lien is considered unperfected.

(c) Notwithstanding Chapter 9, Business & Commerce Code, and except as provided by Subsection (d), a lien created and perfected under this subchapter has priority over a conflicting security interest in or lien on the agricultural crop or the proceeds from the sale of the crop created by the warehouse or the contract purchaser in favor of a third party, regardless of the date the security interest or lien created by the warehouse or the contract purchaser attached. This subsection does not affect:
    (1) the validity or priority of a security interest or lien:
        (A) created and perfected to secure a loan directly to the agricultural producer; or
        (B) created and perfected under Chapter 9, Business & Commerce Code, to secure a loan to a warehouse or a contract purchaser on a company-owned crop in favor of a secured lender;
    (2) the validity or priority of a cotton ginner's lien created under Section 70.003(d); or
    (3) the rights of a holder of a negotiable warehouse receipt.

(d) Subsection (c) does not apply to a contract purchaser who purchases an agricultural crop from an agricultural producer under a marketing contract created under:
    (1) Section 52.016, Agriculture Code; or
    (2) regulations adopted by the United States Department of Agriculture under Title 7 of the United States Code.

Tex. Prop. Code Ann. § 70.4045 (West).

agricultural crop is filed on or before the 90th day after the date" of delivery. *Id.* Key to the resolution of the matter before the Court, the statute further provides, "If a financing statement covering the agricultural crop is not filed within the [90-day period], the lien is considered unperfected." Tex. Prop. Code Ann. § 70.4045(b).

The Texas State Bar Committee on the U.C.C. recognized that the lien created by § 70.402 occupies a unique legal space, noting it does not fall within the definition of an agricultural lien because it is not for goods, services, or land provided in connection with a debtor's farming operation, but it attaches to farm products and proceeds and it is entitled to a priority similar to that under § 9.322(f). Tex. Bus. & Com. Code Ann. § 9.322 (West), State Bar Comm. cmt, 2021 main vol. ¶ 2.

The first question to be answered is whether the Texas Producers hold perfected liens in the grain or grain proceeds in the hands of the debtor. They do not.

A straightforward reading of § 70.4045(a) and (b) says a lien is perfected *only* if a financing statement is filed within 90 days of the last date of delivery. There is no 90-day period of perfection in and of itself. If a financing statement is timely filed, then perfection relates back to the date of delivery. If a financing statement is not filed, the lien is and was unperfected. The comment of the Texas State Bar Committee referenced above alludes to this in observing, "The lien [created by § 70.402(a)] is deemed to have been perfected upon attachment *if* a financing statement is filed on or before 90 days after delivery of the crop." (emphasis added).

While the Producers vigorously argue the statute grants them an automatic 90 days of perfection, they have not submitted any authority for this interpretation, nor has the Court found any on its own. Conforming the statute to that interpretation is a legislative responsibility, not a jurisprudential duty.

Of the Texas Producers asserting liens under § 70.402(a), nine of them did not file financing statements at all, so any liens held by those claimants under the Texas Property Code are unperfected and do not have priority over other claims against the proceeds. The remaining 10 claimants filed UCC-1 financing statements in Texas, although three were filed after the 90-day period had expired.

The question then becomes whether those Texas financing statements validly perfected a lien in the grain or its proceeds in the hands of the debtor. Chapter 9 of the Texas Business and Commerce Code "including applicable filing and perfection requirements, applies to a lien created under this subchapter." Tex. Prop. Code Ann. § 70.404 (West). Chapter 9 is essentially Revised Article 9 of the Uniform Commercial Code. The section governing perfection and priority of security interests says in relevant part:

> [T]he following rules determine the law governing perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral:
> (1) [W]hile a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral.

(2) While collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a possessory security interest in that collateral.

Tex. Bus. & Com. Code Ann. § 9.301 (West).

Also, "[w]hile farm products are located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of an agricultural lien on the farm products." Tex. Bus. & Com. Code Ann. § 9.302 (West).

The Texas Producers rely on the "farm products" and, alternatively, the "collateral" provisions in arguing the financing statements were appropriately filed in Texas. However, neither of those arguments can prevail here. "Farm products" are goods produced when *the debtor* is engaged in a farming operation. Tex. Bus. & Com. Code Ann. § 9.102(34) (West); Neb U.C.C. § 9-102(34). The drafters recognized that farm products lose their identity as such when they are sold to marketers or processors: "Crops . . . cease to be 'farm products' when the debtor ceases to be engaged in farming operations with respect to them. *If, for example, they come into the possession of a marketing agency for sale* or distribution or of a manufacturer or processor as raw materials, *they become inventory.*" U.C.C. § 9-102 cmt. 4 (emphasis added); *United States v. Progressive Farmers Mktg. Agency*, 788 F.2d 1327, 1329 (8th Cir. 1986); *First Bank of N. Dakota (N.A.)-Jamestown v. Pillsbury Co.*, 801 F.2d 1036, 1038 (8th Cir. 1986).

The Texas Producers contend their statutory liens under § 70.4045 are agricultural liens. However, under the U.C.C., an "agricultural lien" is defined in relevant part as:

[A]n interest in farm products:
    (A) that secures payment or performance of an obligation for:
        (i) goods or services furnished in connection with a debtor's farming operation;
        . . .
    (B) that is created by statute in favor of a person that:
        (i) in the ordinary course of its business furnished goods or services to a debtor in connection with a debtor's farming operation; . . . and
    (C) whose effectiveness does not depend on the person's possession of the personal property.

Tex. Bus. & Com. Code Ann. § 9.102(5) (West).

As with the farm products definition, the Texas Producers are not considered "debtors" for these purposes, and the grain was not provided to Hansen-Mueller in connection with *the debtor's* (*i.e.*, Hansen-Mueller's) farming operation, so Texas was not the jurisdiction in which to file financing statements. With regard to the argument that the local law of the location of collateral governs perfection, § 9.301(2) refers to the perfection and priority of a *possessory* security interest in collateral, which is not at issue here.

Therefore, only § 9.301(1), requiring filing in the jurisdiction where the debtor is located, can be applicable here. Hansen-Mueller is incorporated and headquartered in Nebraska. § 9.307(e) ("A registered organization that is organized under the law of a state is located in that state."). It is uncontroverted that none of the Texas Producers filed UCC-1 financing statements in Nebraska, so their liens are unperfected and lack priority as to the grain proceeds.

Despite what the Texas Producers may be thinking right now, this result is not legal chicanery. It is a faithful reading of the statutory language. In much of their experience with the Uniform Commercial Code and liens on their crops or livestock, the Texas Producers may well be "the debtors" and are used to these statutes applying in what would seem to them a common-sense manner, just as they argue to the Court. However, when the identity of the parties shifts and the grain purchaser becomes the debtor, the producers stand in different shoes. The multi-state nature of Hansen-Mueller's business also adds an additional layer to the statutory analysis, where consideration must be given to the location of the company's incorporation, rather than simply the facility locations where the Texas Producers did business.

Next, the Texas Producers make the argument that their liens follow the proceeds, and their priority status based on their allegedly perfected liens was locked in place at the time Hansen-Mueller sold the Texas Producers' grain. This is based on U.C.C. § 9.315:

(a) Except as otherwise provided in this chapter and Section 2.403(b):
    (1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and
    (2) a security interest attaches to any identifiable proceeds of collateral.

Tex. Bus. & Com. Code Ann. § 9.315 (West). The statute excludes agricultural liens from attaching to proceeds in subsection (a)(2), and the official comments explicitly say "[t]his Article does not determine whether a lien extends to proceeds of farm products encumbered by an agricultural lien." *Id.* at cmt. 9.

Again, the finer points of the statute deflate the Producers' argument. The Texas Producers do not have a security interest (a property interest created by contract or law) or an agricultural lien (a defined term under the U.C.C., which, as noted above, does not encompass the liens at issue here) in the grain proceeds, so this statute does not apply. Therefore, the Court need not reach the factual issue of whether the grain was sold within 90 days after the Producers delivered it. The 90-day period is irrelevant because the Texas Producers did not perfect their statutory liens by timely filing a financing statement in Nebraska, so their liens were not perfected.

### b.  11 U.S.C. § 546(b)

The Texas Producers argue that filing a financing statement under the U.C.C. was not the only way to perfect their liens when faced with an intervening bankruptcy petition. Rather, four of the Texas Producers filed Notices of Perfection of Agricultural Lien under § 546(b)(1)(A) in this bankruptcy case (*See* Fil. Nos. 173, 174, 175, 208). The Producers' position is the automatic stay

- 7 -

went into effect during the 90-day period after their deliveries of grain to Hansen-Mueller, at a time when their statutory liens were automatically perfected, and § 362(a)(4) and (5) prevented them from filing their financing statements.[10] To preserve their rights, they turned to 11 U.S.C. § 546(b)(1), which states that the avoidance powers of a trustee

> are subject to any generally applicable law that—
>     (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
>     (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.
>
> (2) If—
>     (A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and
>     (B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;
>     such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.

11 U.S.C. § 546(b).

The automatic stay of §362 is not a complete bar against post-petition activities because subsection (b) does provide for several exceptions. These particular types of actions would be stayed under the language of § 362(a), but for various policy reasons are expressly excepted from the stay. One of these exceptions is § 362(b)(3), which permits the perfection, or the maintenance or continuation of perfection, of interests in property, to the extent that the trustee would be subject to the action taken under § 546(b) or to the extent that such act is accomplished within the period provided under § 547(e)(2)(A). In other words, "'the filing of a bankruptcy petition does not prevent the holder of an interest in property from perfecting its interest if, absent the bankruptcy filing, the interest holder could have perfected its interest against an entity acquiring rights in the property before the date of perfection.'" *Mouton v. Toyota Motor Credit Corp. (In re Mouton)*,

---

[10] Section 362 provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
. . .
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]

479 B.R. 55, 60 (Bankr. E.D. Ark 2012) (quoting *Rios v. Banco Popular de Puerto Rico (In re Rios)*, 420 B.R. 57, 69 (Bankr. D.P.R. 2009)).

Thus, § 362(b)(3), in conjunction with § 546(b)(1), permits creditors in the position of the Texas Producers to perfect their liens even post-petition. Moreover, § 546(b)(2) by its terms applies to those situations where perfection of an interest in property involves possession of the property or filing a civil action. *See, e.g.*, *In re Cook*, 384 B.R. 282 (Bankr. N.D. Ala. 2008) (under Alabama law, a mechanic's lien is perfected when an action to enforce it is commenced; while commencement of the enforcement action would violate the automatic stay, § 546(b)(2) allows notice to be substituted for commencement). The notice requirement is intended to enable the bankruptcy trustee to maintain possession of estate property while also allowing the creditor to perfect its interest in the property. This is not the circumstance here.

Because the Texas Producers did not perfect their liens by timely filing financing statements in the appropriate jurisdiction, and because the notice they filed pursuant to § 546(b) did not serve as an alternative form of perfection, there was no "conversion" when Hansen-Mueller sold the grain and its lenders applied the proceeds against Hansen-Mueller's outstanding debt.

### c. Reclamation

Section 546 of the Bankruptcy Code contains two subsections empowering sellers to seek reclamation from debtors. The general reclamation provision of § 546(c) allows the seller to reclaim goods sold to the debtor in the ordinary course of the seller's business if the debtor received such goods while insolvent and within 45 days before the commencement of the debtor's bankruptcy case. Section 546(d) applies specifically to grain producers, allowing them to exercise any statutory or common-law right to reclaim grain if the debtor received the grain while insolvent. A reclamation demand under § 546(d) must be made before 10 days after the debtor's receipt of the grain.

Two of the Texas Producers[11] are asserting their reclamation rights under 11 U.S.C. § 546(c) and U.C.C. § 2-702.[12] Both served written demand on the debtor within 20 days after the

---

[11] Elliott AGCO (Claim No. 332) and Kyle Miller (Claim No. 342).

[12] 2-702. Seller's remedies on discovery of buyer's insolvency

(1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this article (section 2-705).

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this article

petition date for grain they sold and delivered to Hansen-Mueller within 45 days before the petition date. They argue § 546(d) is inapplicable because it governs only bailments, not sales. The legislative history does not support that interpretation, however. *See* S. Judiciary Comm. Rep. No. 98-65, at 65 (April 26, 1983) ("[This legislation] [a]mends section 546 of the Code to provide greater reclamation protection for producers who have sold grain to an insolvent elevator but have not received payment.").

Hansen-Mueller argues § 546(d) is the governing statute here, and the reclamation claims are untimely because they were not submitted within 10 days after the grain was delivered. In support of the assertion that the Producers are limited to seeking reclamation only under § 546(d), the debtor points to the opening phrase of § 546(c)(1), which says "Except as provided in subsection (d) of this section . . .," the trustee's rights are subject to a seller's reclamation rights if timely written demand is made, and points out that § 546(d) explicitly incorporates the definitions used in § 557.

The existence of subsection (d) in the statute takes the choice of which subsection to use out of the claimants' hands. The phrase "except as provided in subsection (d)" renders subsection (c) completely subject to (d), removing grain producers from § 546(c) and shifting them to coverage under § 546(d). Therefore, the Texas Producers' reclamation claims under § 546(c) are disallowed. Moreover, subsection (d)(1) emphatically says "such producer . . . may not reclaim any grain . . . unless [written demand for reclamation is made] before ten days after receipt thereof by the debtor." The Texas Producers admit no written demands were made within 10 days after delivery of the grain.

The Producers may still have reclamation rights under U.C.C. § 2-702, which gives sellers remedies upon discovery of a buyer's insolvency. Under U.C.C. § 2-702(b), a written misrepresentation of solvency made to the seller within three months before delivery removes the 10-day requirement for reclamation demands. The Texas Producers have provided proof of delivery of their grain in the form of scale tickets and purchase contracts, along with copious amounts of post-delivery correspondence trying to chase down their payments, but these documents do not constitute evidence of a pre-delivery written misrepresentation of solvency. *See Harris Tr. & Sav. Bank v. Wathen's Elevators, Inc. (In re Wathen's Elevators, Inc.)*, 32 B.R. 912, 921 (Bankr. W.D. Ky. 1983) ("We are presented with a potpourri of purchase contracts, scale tickets, grain settlement records, and dishonored checks. We see no probative value to the array of commercial records. . . . [The records do not] contain any assertions regarding the buyer's financial health.").

However, at least one of the Texas Producers submitted copies of text exchanges between himself and a representative of Hansen-Mueller over the course of two months in the summer of 2025 discussing the company's willingness and ability to accept and price various types and amounts of grain delivered on contract. *See* 11 U.S.C. § 557 Grain Claim Form Filed by Justin

(section 2-403). Successful reclamation of goods excludes all other remedies with respect to them.

Neb. U.C.C. § 2-702; Tex. Bus. & Com. Code § 2.702.

Hansen, at 22-31 (Fil. No. 362). Whether this is the type of evidence that constitutes a misrepresentation of solvency is debatable, but I will not foreclose the Texas Producers from developing this issue further. Nevertheless, even if the reclamation claims are successful, the Producers' reclamation rights are subordinate to the prior rights of those who hold security interests in the proceeds. 11 U.S.C. § 546(c); U.C.C. § 2-702(3).

### d.   Third-party claims/Food Security Act of 1985

Several of the Texas Producers filed proofs of claim in the bankruptcy case on behalf of their secured operating lenders under 11 U.S.C. § 501(b) and Federal Rule of Bankruptcy Procedure 3005(a).[13] The Texas Producers assert priority based on their operating lenders' security interests in their crops and the proceeds thereof, which they argue are superior to BMO Bank's security interests in the debtor's assets. The Texas Producers' argument follows the "first in time, first in right" legal maxim, establishing that their lenders perfected their security interests by UCC-1 filing financing statements in Texas long before BMO Bank perfected its security interest in Hansen-Mueller's assets by filing a UCC-1 financing statement in Nebraska.

The debtor argues the Texas Producers lack standing to assert the security interests of third parties, and moreover, even if they do have standing, the third parties did not provide notice to the debtor as required under 7 U.S.C. § 1631.

The Texas Producers assert standing by virtue of § 501(b), which says: "If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim." Federal Rule of Bankruptcy Procedure 3005 implements this ability of others to file a claim on behalf of a creditor:

> (a)  In General. If a creditor fails to file a proof of claim within the time prescribed by Rule 3002(c) or Rule 3003(c), it may be filed by an entity that, along with the debtor, is or may be liable to the creditor or has given security for the creditor's debt. The entity must do so within 30 days after the creditor's time to file expires. A distribution on such a claim may be made only on satisfactory proof that the distribution will diminish the original debt.

Fed. R. Bankr. P. 3005(a). The Texas Producers' secured lenders did not file proofs of claim by the bar date of January 26, 2026, so the Producers timely filed claims on their behalf.

The Texas Producers argue that BMO Bank's security interest in grain inventory and grain proceeds in Hansen-Mueller's possession is junior to the security interests held by the Producers' lenders in the Producers' crops and crop proceeds because the Producers' lenders recorded their financing statements earlier than BMO Bank did.

Standing is a two-part concept: constitutional and prudential. To show constitutional standing, a litigant must allege both that their injury is concrete and actual or imminent and that the injury

---

[13] This group consists of 10 producers: AKA Farms; Richard Beyer d/b/a Richard A. Beyer Farms; Bures Farms; Fleming Grain & Cattle, LLC; Hlavinka Cattle Co. JV; J & K AG LLC; Rodney & Sandra Janczak Farms J.V.; Dustin Mikel; USB Jt. Venture; and Vykukal Farms, LLC.

is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The concept of prudential standing arises not from the U.S. Constitution but from the exercise of judicial self-governance designed to guarantee that courts only resolve disputes that are appropriate for judicial resolution. *Warth v. Seldin*, 422 U.S. 490, 500 (1975). In other words, prudential standing generally requires the plaintiff's claim to be based on its own legal rights, as opposed to those of a third party. *Nordisk Sys., Inc. v. Sirius Computer Sols., Inc.*, 156 F. Supp. 3d 1212, 1216 (D. Or. 2015) (cleaned up). As the debtor noted in its briefing, there may exist special circumstances where a litigant can assert the rights of third parties, such as when the interests of the litigant and the third parties are closely aligned or when third parties may be unable to assert their rights themselves, but "where these special considerations are absent, a litigant is restricted to asserting his own constitutional and statutory rights." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 643-44 (2d Cir. 1988).

While nothing in the record indicates the existence of "special considerations" that would authorize the Texas Producers to act on behalf of their secured lenders, even assuming without deciding that they have standing to raise these claims, their argument relies on characterizing the funds Hansen-Mueller obtained from selling the Texas Producers' grain as "crop proceeds." As explained earlier in this opinion, they are not. The grain became inventory in the transaction between the Texas Producers and Hansen-Mueller and none of the Texas Producers perfected their statutory lien in the crops delivered. The Texas Producers do not have a lien on the proceeds through which their lenders could claim a continuing security interest.

Moreover, the Food Security Act of 1985 authorizes a buyer of farm products, who is a buyer in the ordinary course of business, to take free of a security interest created by the seller. 7 U.S.C. § 1631(d). A buyer in the ordinary course of business is defined as "a person who, in the ordinary course of business, buys farm products from a person engaged in farming operations who is the business of selling farm products." 7 U.S.C. § 1631(c)(1). However, a seller's secured creditors can protect themselves under the FSA by providing written notice to the buyer or filing a financing statement. A purchaser of farm products "takes subject to a security interest created by the seller if (1) the secured creditor provided, within a year before the sale, the farm products purchaser with direct written notice of the secured creditor's interest; or (2) the secured creditor filed an effective financing statement covering the farm products if the state has established a central filing system that complies with the Act." *Farm Credit Midsouth, PCA v. Farm Fresh Catfish Co.*, 371 F.3d 450, 453 (8th Cir. 2004) (cleaned up) (citing 7 U.S.C. § 1631(e)(1)(A) and (2)). No such central filing system has been established in Texas, *First State Bank of Athens Mabank Branch v. Purina Ag Capitol Corp.*, 113 S.W.3d 1, 5 n.5 (Tex. App. 1999), and there is no evidence the secured lenders provided direct written notice of their security interests to Hansen-Mueller within one year before the sale.

To salvage their argument, the Texas Producers argue the FSA preempts U.C.C. Article 9 only if the sale was made in the ordinary course of business, and this sale was not in the ordinary course because BMO Bank influenced and controlled Hansen-Mueller's business decisions at the time, and the Texas Producers' grain deliveries occurred "against the backdrop of an impending bankruptcy," unbeknownst to them. The Producers argue these were "extraordinary and undisclosed circumstances" that removed the transactions from the ordinary course of business and rendered the FSA inapplicable. The Texas Producers insinuate that Hansen-Mueller acted in

- 12 -

bad faith with regard to them, but even if that were true, Congress deleted the good-faith requirement from the FSA. *Lisco State Bank v. McCombs Ranches, Inc.*, 752 F. Supp. 329, 334 (D. Neb. 1990); *Farmers & Merchants State Bank v. Teveldal*, 524 N.W.2d 874, 878 (S.D. 1994). The alleged intentions of Hansen-Mueller and BMO Bank do not alter the fact that the security interests of the Texas Producers' lenders do not extend to the grain proceeds.

Even if the lenders' security interests extended to the proceeds when Hansen-Mueller liquidated the grain, the interests are unperfected unless the cash proceeds are identifiable or a financing statement has been filed to cover them. Neb. U.C.C. § 9-315(d); Tex. Bus. & Com. Code Ann. § 9.315(d) (West). When the proceeds are held in a deposit account, a secured party with control of the account has priority over a conflicting security interest held by a secured party that does not have control of the account. Neb. U.C.C. § 9-327(1); Tex. Bus & Com. Code § 9.327. Here, BMO Bank and the debtor's other secured lenders control those deposit accounts and therefore have priority over the alleged security interests of the Producers' lenders.

For these reasons, the claims purportedly filed on behalf of the Texas Producers' secured operating lenders must be disallowed.

## III.   Mississippi Claimants[14]

The Mississippi Claimants assert the issues of reclamation and equitable subordination to support their right to recover on their grain claims.

### a.   Reclamation

The Mississippi Claimants assert reclamation rights to the grain based on §546(c) (although they also make arguments based on § 546(d)) and state law, including Miss. Code Ann. § 75-2-702 (West). Although nothing in the record indicates any of the Mississippi Claimants made written demand on Hansen-Mueller for reclamation as required under § 546(c) and (d), they assert state reclamation rights under § 2-702(2) of the Uniform Commercial Code, which gives unpaid sellers additional remedies when the buyer is insolvent. That subsection gives a seller who discovers that a buyer is insolvent 10 days to demand to reclaim the goods (it doesn't say the demand must be written). However, the 10-day deadline does not apply "if misrepresentation of solvency has been made to the particular seller in writing within three (3) months before delivery." Miss. Code Ann. § 75-2-702(2) (West); Neb. U.C.C. § 2-702(2). The Mississippi Claimants request leave to conduct discovery on the issue of insolvency. It is unclear how such discovery would bolster their reclamation claims; the misrepresentation of solvency under § 2-702(2) must have "been made to the particular seller in writing within three (3) months before delivery." If such misrepresentations were made, the Mississippi Claimants presumably would possess the documents and should have been able to submit them to the Court in connection with their claims.

Because the Texas Producers are being granted the opportunity to prove the "written misrepresentation of solvency" element of their reclamation claims, the same opportunity will be

---

[14] This group consists of four claims: Michael and Cole Bilbro (Claim No. 321); Campbell Farming (Claim No. 322); Double J Farms (Claim No. 323); and E & J Farms (Claim No. 324).

granted to the Mississippi Claimants. Nevertheless, even if the reclamation claims are successful, the Claimants' rights are subordinate to the prior rights of those who hold security interests in the proceeds. 11 U.S.C. § 546(c); U.C.C. § 2-702(3).

### b. Equitable subordination

The Mississippi Claimants argue the Court must determine the relative priority of competing claims in the grain and the grain proceeds and can use its equitable jurisdiction to do so. Under 11 U.S.C. § 510(c), the Court has the power to subordinate or postpone payment of a claim if it finds that recognized principles of equity have been violated. The question is whether creditor misconduct has harmed other creditors, and if it has, then payment of an allowable claim should be postponed until after the payment of claims of those creditors who were harmed. Here, the Mississippi Claimants argue Hansen-Mueller's pre-petition secured lenders took steps to ensure their first-priority security interests in the debtor's personal property would put them at the head of the payment line, ahead of the farmers who supplied Hansen-Mueller with grain. The Claimants particularly question the timing of' the debtor's bankruptcy, suggesting the pre-petition secured lenders may have taken unfair advantage of Hansen-Mueller's urgent need for "a valid and active line of credit" to obtain reinstatement of its Nebraska grain dealer's license just 13 days before filing for bankruptcy protection to put their interests in the best possible position at the expense of the farmers.

Equitable subordination of one claim in favor of another under § 510(c) requires (1) some inequitable conduct by the claimant; (2) resulting in injury to other creditors or conferring an unfair advantage on the claimant; and (3) an outcome from the subordination that is not inconsistent with other provisions of the Bankruptcy Code. *Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan v. M & S Grading, Inc. (In re M & S Grading, Inc.)*, 541 F.3d 859, 866 (8th Cir. 2008); *Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1282 (8th Cir. 1988).

The Claimants must establish inequitable conduct by the debtor's pre-petition secured lenders: "Equitable subordination requires proof of inequitable conduct by the claimant that injured other creditors or conferred an unfair advantage. Fraud, illegality, and breach of fiduciary duty are misconduct that justifies equitable subordination." *Kaler v. Bala (In re Racing Servs., Inc.)*, 571 F.3d 729, 731 (8th Cir. 2009) (cleaned up). "Inequitable conduct has been regarded as a wrong or unfairness or, 'at the very least, a masquerade of something for what it is not.'" *Jacoway v. Dept. of Treasury-IRS (In re Graycarr, Inc.)*, 330 B.R. 741, 749 (Bankr. W.D. Ark. 2005) (quoting *In re Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir. 1997)).

The Mississippi Claimants' allegations against the pre-petition secured creditors at this stage cite examples of the secured creditors' actions to maintain their first-priority security interests – actions such as "regularly conducting UCC financing statement filing searches" to look for potential competing security interests or lien filings – and express disbelief at the secured creditors' assertion they had no notice that any grain providers claimed liens on the debtor's grain inventory until after the bankruptcy case was filed. None of this, on its face, seems to rise to the level of inequitable conduct that would warrant subordinating the claim of the pre-petition secured creditors, but fact-finding is clearly necessary. Pursuing an equitable subordination claim is not

the same as a § 557 claim to grain or its proceeds. Instead, equitable subordination is a matter that should be the subject of an adversary proceeding. *See* Fed. R. Bankr. P. 7001(h). Accordingly, nothing in this order should be deemed to prevent any entity from pursuing an equitable subordination claim via an adversary proceeding.

## IV.     Other claims

Hansen-Mueller has agreed to resolve the claims of Devin Flanders (Claim No. 313), Tyler Narloch (Claim No. 284), and William Wagner (Claim No. 326). It has also agreed with Bunge Canada, Inc. (Claim No. 360), to postpone the resolution of Bunge's claim. The claims alleging § 507(a)(6) priority are not claims under § 557 to grain or its proceeds. Instead, those claims are seeking a certain priority position for potential future distributions to unsecured claimants which will be addressed if and when it becomes necessary to determine such distributions. Nothing herein is intended to affect the rights of the surety companies.

## V.     Conclusion

The Texas Producers' state statutory liens are unperfected and thus do not provide the Texas Producers with the level of priority they believe they are entitled to. Their liens are not perfected under § 546(b). Their secured operating lenders do not have priority interests in proceeds. However, the Texas Producers may provide evidence to further develop their reclamation claims. The rest of their arguments do not support the relief they seek. Likewise, the Mississippi Claimants will also be given the opportunity to further develop their reclamation arguments, and to file an adversary proceeding on their equitable subordination claims, if warranted.

IT IS ORDERED:

1. For the reasons stated above and on the record at the hearing on April 14, 2026, the following grain claims are disallowed:

| Claim No. | Claimant | Claim No. | Claimant |
|---|---|---|---|
| 273 | Danielski Harvesting & Farming | 276 | Jeffrey Mark Anderson |
| 281 | BB Sczepanski LP | 283 | Ross Townsend |
| 285 | Robert McCarley | 289 | Skyler Dowling |
| 290 | Kirby Farms, Inc. | 292 | Jay Frenzel |
| 293 | Daniel T. Mashburn & Son Farms | 295 | Joey Lee Potucek |
| 296 | Collwest Grain, Ltd. | 297 | Cameron Lundeen |
| 298 | Brian Lundeen | 299 | S & B Grain Co., LLC |
| 300 | Richardson Farms | 301 | Mitchell Wavra |
| 302 | Mark Wavra | 303 | Tempel Grain Elevators, LLP |
| 304 | Diamond Rice, Inc. | 305 | River Bottom Farms, LLC |
| 309 | Ethan Leichtman | 310 | Doug Schwartz Trucking, Inc. |
| 312 | Quality Transport | 315 | Oahe Grain Corp. |
| 316 | Hasbargen Farms | 327 | Jason Bonifas |
| 328 | Weskan Grain, LLC | 329 | Darwin Boutain – Boutain Farms |
| 330 | Butch Farms | 331 | Erickson Grain |

| | | | |
|---|---|---|---|
| 333 | Mikel Bros. Partnership | 334 | Paoli Farmers Co-op. Elevator Co. |
| 335 | HF Bostic Farms, Inc. | 336 | Ben Looney |
| 337 | Dean Hoiland | 338 | Roger Love |
| 339 | Royce Ritter | 340 | Old Stage Farms |
| 341 | Howard Pruser | 343 | Rodney & Sandra Janczak Farms JV |
| 344 | Golden Harvest Farms, LLC | 347 | Richard A. Beyer Farms |
| 348 | Dustin Mikel | 349 | Haunted Hill Grain, LLC |
| 350 | J & K Ag, LLC | 351 | Maass Farms General Partnership |
| 352 | USB Joint Venture | 353 | Elm Creek Commodities, LLC |
| 355 | AKA Farms | 356 | Bures Farms |
| 357 | Hlavinka Cattle Co. JV | 358 | Justin Gaines |
| 359 | Fleming Grain & Cattle, LLC | 361 | Vykukal Farms, LLC |
| 362 | Justin Hansen/Hansen Farms | 363 | EFTA Farms, Inc. |
| 364 | McDougal-Sager & Snodgrass Grain, Inc. | 365 | Louisiana Dept. of Agriculture & Forestry |
| 366 | Mylan Gehle | 367 | Siefker Farms, Inc. |
| 368 | Andrew Gettys | 370 | McIlnay Farms |
| 372 | Michael & Amanda Juenemann | 373 | USB Joint Venture |
| 374 | Alan Bonifas | 375 | Green Plains Trade Group, LLC |
| 376 | Keller Grain, Inc. | 377 | Drew Parsley |
| 378 | Magnolia Grain Co. | 379 | Middleton Planting Co. |
| 385 | Dillon Scott Springer | 386 | Keith Meyer Farms |
| 387 | Kyle Jeffery Sullivan | 388 | Roger Love |
| 389 | LeRoy Coop. Association, Inc. | 390 | Green Plains Trade Group, LLC |
| 392 | Middleton Planting Co. | 393 | Alan Atkins |
| 399 | Mazour Farms | | |

This Order is final as to the 79 claims listed in the chart above, pursuant to Federal Rule of Civil Procedure 54(b) and Federal Rule of Bankruptcy Procedure 9014(c). There is no just reason to delay the claimants above from seeking appellate relief while the remaining claims await resolution.

2.  The six claimants[15] (two of the Texas Producers and the four Mississippi claimants) seeking reclamation under U.C.C. § 2-702 are directed to produce evidence that a misrepresentation of solvency was made to the particular seller in writing within three months before the grain was delivered. Such evidence shall be filed with the Court by June 5, 2026, or the reclamation claims will be denied.

3.  The claims of Devin Flanders (Claim No. 313), Tyler Narloch (Claim No. 284), and William Wagner (Claim No. 326) have been resolved to the parties' mutual satisfaction. The resolution will be final and binding when the parties file a motion to approve settlement and the Court signs a proposed order to be submitted by the parties.

_____

[15]Michael and Cole Bilbro (Claim No. 321); Campbell Farming (Claim No. 322); Double J Farms (Claim No. 323); E & J Farms (Claim No. 324); Elliott AGCO (Claim No. 332); and Kyle Miller (Claim No. 342).

4.  The claim of Bunge Canada, Inc. (Claim No. 360) is deferred pending further proceedings at the request of the debtor and/or Bunge.

5.  Any claimant alleging a claim for equitable subordination is not a valid claim to the grain or its proceeds and is denied for purposes of these § 557 Procedures. However, this denial is without prejudice to any claimant who may wish to pursue an equitable subordination claim in an adversary proceeding.

6.  This Order pertains only to the § 557 grain claims. Nothing in this order should be deemed to impair any claimant's right to pursue an unsecured proof of claim in the ordinary claims allowance process in this bankruptcy case.

DATED: May 4, 2026

BY THE COURT:

/s/ Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:

| | |
|---|---|
| *Brian Koenig | Jacob Schwartz |
| David Langston | Ozen Zimmerman |
| Shane Mecham | Michael Gustafson |
| Rob Shortridge | James Sullivan |
| Elizabeth Lally | Maurice VerStandig |
| James Niemeier | United States Trustee |

Movant (*) is responsible for giving notice to other parties if required by rule or statute.